UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GREAT MIDWEST INSURANCE COMPANY,**
a Texas corporation,

                                    **Plaintiff,**

  v.                                      Civil Action No.:  3:23CV680

**WB CONTRACTING GROUP, INC.**
a Virginia corporation,

      **SERVE:**      **William Alfred Bigger**
                          **Registered Agent**
                          **15525 Chesdin Landing Court**
                          **Chesterfield, VA  23838**
                          **(County of Chesterfield)**

**WILLIAM BIGGER**

      **SERVE:**      **15525 Chesdin Landing Court**
                          **Chesterfield, VA  23838**
                          **(County of Chesterfield)**

**ALISA BIGGER**

      **SERVE:**      **15525 Chesdin Landing Court**
                          **Chesterfield, VA  23838**
                          **(County of Chesterfield)**

                                      **Defendants.**

## **COMPLAINT**

The plaintiff, Great Midwest Insurance Company, by counsel, in accordance with Fed. R. Civ. P. 3, states the following as its Complaint against defendants WB Contracting Group, Inc., William Bigger, and Alisa Bigger.

## THE PARTIES

1. Great Midwest Insurance Company ("GMIC") is a corporation duly organized and existing under the laws of the State of Texas, where it also maintains its principal place of business. GMIC is duly authorized to engage in the surety business in the Commonwealth of Virginia and serves as a subcontract bond surety for WB Contracting Group, Inc.

2. Defendant WB Contracting Group, Inc. ("WBCG") is and was, at all times pertinent to this proceeding, a corporation duly organized and existing under the laws of the Commonwealth of Virginia. WBCG maintains its principal place of business at 15525 Chesdin Landing Court, Chesterfield, Virginia 23838 (County of Chesterfield).

3. Defendant William Bigger is and was at all times pertinent to this proceeding an individual citizen of the Commonwealth of Virginia who resides at 15525 Chesdin Landing Court, Chesterfield, Virginia 23838 (County of Chesterfield). At all times pertinent to this proceeding, Mr. Bigger served as the President of WBCG, and was and continues to serve as a personal indemnitor of GMIC.

4. Defendant Alisa Bigger is and was at all times pertinent to this proceeding an individual citizen of the Commonwealth of Virginia who resides at 15525 Chesdin Landing Court, Chesterfield, Virginia 23838 (County of Chesterfield). At all times pertinent to this proceeding, Mrs. Bigger served and continues to serve as a personal indemnitor of GMIC.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because (1) GMIC is a citizen of the State of Texas, (2) defendant WBCG is a citizen of the Commonwealth of Virginia, where it is organized and has its principal place of business, and (3) the individual defendants William Bigger and Alisa Bigger are citizens of the Commonwealth of Virginia. The

amount in controversy exceeds $75,000, exclusive of costs and interest.

6. Venue in this District and Division is proper because it is specifically conferred by Local Civil Rule 3(C) and 28 U.S.C. § 1391 as all defendants reside in Chesterfield County, Virginia.

### STATEMENT OF FACTS

7. In this Complaint, GMIC seeks to enforce its unconditional rights as surety under an indemnity agreement, and to compel performance of the respective contractual obligations of WBCG, William Bigger and Alisa Bigger to indemnify and hold GMIC harmless by (a) immediately reimbursing it for any and all losses, all in relation to a subcontract payment bond it issued, as surety, in connection with a federal construction project at Fort Belvoir, Virginia.

8. On or about January 23, 2023, WBCG, as principal and business entity indemnitor, and William Bigger and Alisa Bigger, as individual indemnitors (WBCG, William Bigger and Alisa Bigger are sometimes collectively referred to as the "Indemnitors") entered into a written General Indemnity Agreement ("GIA"), a true and accurate copy of which is attached as **Exhibit 1**.

9. In the GIA each of the Indemnitors, jointly and severally, promised and agreed to fully and continuously indemnify and hold GMIC harmless from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses, which it might sustain or incur, or for which it may become liable or have reason to believe it may be, or may become liable, by reason of (a) having executed or delivered any bonds on behalf of any Indemnitor, (b) the failure of any Indemnitor to perform or comply with the covenants and conditions of the GIA, or (c) the need to enforce any of the covenants and conditions of the GIA.

10. WBCG also issued (A) an Irrevocable Directive of Draw Proceeds dated January 31,

2023, directing all Project funds earned by WBCG to be deposited by American Water with Dayhill Group, LLC, as escrow agent, and (B) a Letter to GMIC's affiliate dated February 1, 2023, confirming that Project funds would be forwarded to Dayhill Group, LLC immediately upon receipt, and acknowledging that its failure to do so would constitute a breach of the GIA. Copies of the Irrevocable Directive of Draw Proceeds and February 1, 2023 Letter are attached as **Exhibits 2A and 2B**, respectively. As all parties were aware, use of a third-party escrow agent is common in the construction industry to ensure that funds paid to a subcontractor are used to the extent necessary to compensate its downstream sub-subcontractors, materialmen, laborers, service and/or rental equipment providers.

11. In reliance upon the terms and conditions of the GIA, and the promises made in the Irrevocable Directive of Draw Proceeds and February 1, 2023 Letter, GMIC considered and approved the request of WBCG for the issuance of subcontract payment and performance bonds on a federal construction project known as "Install Permanent H2S Reduction in LS 97 Force Main," at Fort Belvoir, Virginia ("Project"). In accordance with the subcontract which it had been awarded by American Water Enterprises, LLC, American Water Operations and Maintenance, LLC, and/or American Water Military Services, LLC (collectively, "American Water") the general contractor on the Project, WBCG furnished to American Water its subcontract payment and performance bonds for the Project. The bonds were issued by GMIC, as surety, naming WBCG as its principal and co-obligor, and American Water as its obligee. The payment bond was issued for the protection of all persons who supplied labor, materials, or equipment for use in the performance of WBCG's subcontract on the Project. A copy of the subcontract payment bond is attached as **Exhibit 3**.

12. The Federal Small Business Administration ("SBA") sponsors a surety bond

guarantee program under which it will guarantee private surety bonds in exchange for a fee to be paid by an eligible small business acting as principal.[1]  Although GMIC was informed by WBCG's surety bond broker that WBCG participated in this program for previous bonds, GMIC agreed <u>not</u> to require such participation with respect to the Project with the understanding and condition that WBCG would deposit the funds it received on the Project with Dayhill Group, LLC, for ultimate disbursement as necessary to WBCG's downstream sub-subcontractors, materialmen, laborers, service and/or rental equipment providers.  Therefore, the bonds issued by GMIC were not guaranteed by the SBA.

13. In connection with the performance of its obligations to American Water under its subcontract, WBCG entered into various sub-subcontracts and/or purchase orders with sub-subcontractors, materialmen, laborers, service providers and/or rental equipment providers. Notwithstanding its contractual obligations to its sub-subcontractors, materialmen, laborers, service and/or rental equipment providers, WBCG refused or failed to pay at least one of them for the labor, materials, services and/or rental equipment they furnished in connection with the work on the Project.

14. GMIC has received a claim under the payment bond which it issued on behalf of WBCG from R&S Services, Inc. ("R&S") in the amount of $623,820.  GMIC investigated the claim and, upon determining that it was valid in part, agreed to resolve the claim in exchange for payment to R&S in the amount of $608,840.98.  A copy of the October 17, 2023 Final Release and Assignment executed by R&S is attached as **Exhibit 4**.  Payment of the settlement funds to R&S is expected to occur imminently.

15. Upon information and belief, WBCG has received from American Water and

---

[1] A brief overview of this program can be found at https://www.sba.gov/funding-programs/surety-bonds#id-sba-guarantees-surety-bonds (last accessed October 18, 2023).

deposited the vast majority of the funds due and owing to it under its subcontract, including funds earned by R&S.  Nevertheless, WBCG has failed and refused to (1) remit any funds to R&S for the work it performed, or (2) deposit any of the funds received from American Water with Dayhill Group, LLC, as escrow agent.

16. Based upon the information then available to it, and in accordance with the GIA, GMIC on September 5, 2023, asserted its demand that the Indemnitors provide collateral in the amount of $623,820 ("First Collateral Demand").  A copy of the First Collateral Demand is attached as **Exhibit 5**.

17. GMIC reiterated its collateral demand in a letter dated October 12, 2023 ("Second Collateral Demand"), a copy of which is attached as **Exhibit 6**.

18. The Indemnitors have failed and refused to provide the requested collateral.

19. In ¶ 5 of the GIA, the Indemnitors, jointly and severally, specifically agreed to:

Deposit with Surety, as collateral security…funds…equal to (1) the liability of the Surety, if established; (2) any indebtedness, liability, claim asserted, expense, suit or judgment under any Bond…or (4) the amount established by the Surety, in its sole discretion, that represents the exposure for or from any claim asserted against any Bond, whether or not a reserve has been established, for which the Indemnitors may be obligated to indemnify the Surety under the terms of this Agreement.

GIA (Ex. 1), ¶ 5 at page 2.

20. GMIC has called upon WBCG, William Bigger and Alisa Bigger to specifically perform and fulfill their contractual obligations to indemnify it and hold it harmless in accordance with the GIA.

21. WBCG, William Bigger and Alisa Bigger have (1) wholly failed and otherwise refused to provide the collateral required by GMIC's collateral demands, (2) failed to make payment for labor and materials supplied to WBCG on the Project, and (3) failed to comply with

the promises made in the Irrevocable Directive of Draw Proceeds and February 1, 2023 Letter, each of which constitutes a default under and breach of the GIA.

22. Under the GIA, GMIC is entitled to be indemnified and held harmless by WBCG, William Bigger and Alisa Bigger, jointly and severally.

23. As a result of its issuance of the subcontract payment bond to which reference is made above, and the failure and refusal of WBCG, William Bigger and Alisa Bigger to fulfill their obligations under the GIA, GMIC has sustained and continues to incur significant damages for which the Indemnitors are jointly and severally liable.

### COUNT I
### QUIA TIMET AND INJUNCTIVE RELIEF

24. GMIC restates and incorporates the allegations as set forth in ¶¶ 1 through 23 above as if specifically set forth in this paragraph.

25. As of the filing of this Complaint, GMIC (a) received and will imminently pay a payment bond claim on the Project, (b) has not received adequate assurances from the Indemnitors as to the actual status of the Project or the legitimacy of the claim asserted by R&S, and (c) has not received collateral in accordance with the GIA.

26. GMIC justifiably fears it will sustain significant losses and irreparable harm as a result of its issuance of the subcontract bonds. GMIC has or will imminently sustain losses of at least $608,840.98 in the form of payment bond claims, consultants' and attorneys' fees, costs and expenses.

27. In accordance with the GIA, and the equitable doctrines of exoneration and *quia timet*, GMIC is entitled to have the Indemnitors, jointly and severally, place it immediately in funds sufficient to cover the losses it has sustained and the losses it anticipates by virtue of its issuance of the subcontract payment and performance bonds.

28. Unless the assets of all of WB Contracting Group, Inc., William Bigger and Alisa Bigger are marshaled, accounted for and preserved, and their indemnity obligations to GMIC are collateralized and GMIC is placed in funds or otherwise secured, GMIC's obligations under the subcontract bonds, and its right of indemnification under the GIA and the law will not be adequately secured.

29. GMIC is entitled to be placed in funds in the amount of $608,840.98 or as the evidence may otherwise establish, and to be fully collateralized by the Indemnitors immediately and prior to making any further payments in discharge of its bond obligations.

30. GMIC is without a plain, speedy or adequate remedy at law which will serve to immediately indemnify and save it harmless for its losses and probable liabilities, and will be irreparably and permanently injured unless this Court grants immediate injunctive and equitable relief. Further, unless injunctive and *quia timet* relief are granted immediately, GMIC is fearful that the Indemnitors are likely to sell, transfer, dispose of, lien, secure or otherwise divert or encumber their assets from being used to discharge their obligations to exonerate and indemnify GMIC, all to GMIC's irreparable harm.

31. GMIC has been forced to retain legal counsel and incur other expenses and costs in pursuit of its rightful interests in this matter, and is entitled to be indemnified and saved harmless in accordance with the GIA and the law.

WHEREFORE, Great Midwest Insurance Company requests the entry of an order (1) awarding judgment in its favor, and (2) granting mandatory and prohibitory injunctive relief against WB Contracting Group, Inc., William Bigger and Alisa Bigger, jointly and severally, and as their interests appear, as follows:

    A.    Directing WB Contracting Group, Inc., William Bigger and Alisa Bigger,

and their executors, administrators, distributees, successors and assigns, or anyone acting in concert with them or on their behalf to:

    1.    Immediately place GMIC in funds in at least the amount of $608,840.98 by money, property, liens or other security interests in property, as determined by GMIC, to collateralize and serve as ample security for its obligations under the payment bonds, and rights of indemnification and to be held harmless under the Indemnity Agreement;

    2.    Render to GMIC an immediate, full and complete accounting of any and all assets owned by them or in which they have had any interest since January 23, 2023, and the disposition of the same, to the extent they have not been previously disclosed;

    3.    Allow GMIC and/or their representatives immediate, full and complete access to all financial records, books and accounts which are maintained by them or on their behalf, to the extent such access has not already been provided;

    4.    Indemnify and save GMIC harmless for any and all liabilities, losses and expenses, including consultants' and attorneys' fees, which have been and/or may be incurred by GMIC as a result of GMIC having executed bonds for WBCG;

B.    Permanently enjoining and restraining WBCG, William Bigger and Alisa Bigger, and their officers, directors, employees, executors, administrators, distributees, successors and assigns, or anyone acting in concert with them or on their behalf, from:

    1.    Selling, transferring or otherwise disposing of or encumbering their assets and property in any manner, form or shape whatsoever;

    2.    Allowing their assets and property to be liened or otherwise encumbered, unless and until GMIC shall be placed in funds or otherwise secured as required by the GIA;

C.    Granting a lien upon all of the corporate and personal assets and property of WBCG, William Bigger, and Alisa Bigger, and their executors, administrators, distributees, successors and assigns, or anyone acting in concert with them or on their behalf, including all real and personal property, which they may own or in which they

9

have an interest, either individually or jointly, for the purpose of securing GMIC against any and all losses that it may sustain or incur by virtue of having executed payment and performance bonds for WBCG, and to remain in effect unless and until GMIC shall be placed in funds or otherwise secured as required by the GIA; and

        D.      Awarding such further relief as the Court deems just.

**COUNT II**
**BREACH OF CONTRACT**

32. GMIC restates and incorporates the allegations as set forth in ¶¶ 1 through 31 above as if specifically set forth in this paragraph.

33. Under the GIA, the Indemnitors, jointly and severally, are obligated to indemnify and hold GMIC harmless from and against any and all liability, loss, expenses, and consultants' and attorneys' fees incurred as a result of the issuance of any bond on behalf of WBCG.

34. As a result of GMIC's issuance of the subcontract payment bond on behalf of WBCG, GMIC (a) has received and will imminently pay a claim under its payment bond, and (b) has incurred and expects to incur additional consultants' and attorneys' fees, costs, and expenses.

35. The Indemnitors' failure and/or refusal to indemnify and hold GMIC harmless under the GIA constitutes a default and material breaches of contract, the direct and natural result of which has caused GMIC to sustain significant damages.

WHEREFORE, GMIC seeks judgment against WBCG, William Bigger, and Alisa Bigger, jointly and severally, and as their interests appear, in the principal amount of $608,840.98 or those sums which the evidence may otherwise establish, plus all interest at the pre-judgment rate on each payment, costs, expenses, and consultants' and attorneys' fees, as well as post-judgment interest on the entire sum until paid, all as provided by the terms and conditions of the GIA.

## COUNT III
### BREACH OF FIDUCIARY DUTY

36. GMIC restates and incorporates the allegations as set forth in ¶¶ 1 through 35 above as if specifically set forth in this paragraph.

37. In a provision of the GIA entitled, "FUNDS IN TRUST FOR SURETY," WBCG, William Bigger, and Alisa Bigger agreed that:

> [I]n connection with the performance of a contract or agreement, the entire contract price or consideration to be received by [WBCG] shall be dedicated to the satisfaction of the conditions of the contract in question. All funds paid, due or to become due, under any contract with which the Surety shall have issued a Bond, shall be impressed with a trust in favor of laborers, materialmen, suppliers, subcontractors and Surety. Indemnitors shall use such money and other proceeds for the purposes of performing the Bonded Obligations and for discharging the obligations under the Bond and under this Agreement, and for no other purpose until the liability of the Surety under the Bond is completely exonerated. Any breach of this provision shall constitute a breach of the fiduciary obligations of [WBCG] and/or Indemnitors as well as a misrepresentation of a material fact upon which Surety is relying when issuing any Bond(s) on behalf of any Indemnitor or Principal.

GIA (Ex. 1), ¶ 6 at page 3.

38. WBCG, William Bigger, and Alisa Bigger owe a fiduciary duty to GMIC to preserve the integrity of the subcontract funds, and to apply them solely for the payment of WBCG's payment obligations to its sub-subcontractors, materialmen, laborers, service providers and/or rental equipment providers on the Project, and for the performance of the obligations of WBCG and/or GMIC under the subcontract and/or bonds.

39. If and to the extent the Indemnitors have failed to fulfill their fiduciary duties and the various subcontract funds have been used for purposes other than their intended purpose, or the funds are being or have been commingled, or the funds have been unreasonably withheld, then WBCG, William Bigger, and Alisa Bigger have breached their fiduciary duties, which

breaches are material in nature and have caused damage to GMIC.

WHEREFORE, GMIC seeks judgment against WBCG, William Bigger, and Alisa Bigger, jointly and severally, in the principal amount of $608,840.98, or those sums which the evidence may otherwise establish, plus all interest at the pre-judgment rate on each payment, and its consultants' and its attorneys' fees, costs and expenses, as well as post-judgment interest on the entire sum until paid, all as provided by the terms and conditions of the GIA.

## COUNT IV
### FRAUD (WBCG & WILLIAM BIGGER)

40. GMIC restates and incorporates the allegations as set forth in ¶¶ 1 through 39 above as if specifically set forth in this paragraph.

41. William Bigger, acting within the scope of his employment with WBCG, made the following false representations to GMIC:

   a. "WB Contracting will remit all payments received to Dayhill Group, LLC." Ex. 2A, Irrevocable Directive of Draw Proceeds.

   b. "[A]ll Job Funds will be forwarded to Dayhill Group, LLC immediately upon receipt of those funds." Ex. 2B, February 1, 2023 Letter.

42. These representations were intended to create the impression that William Bigger and WBCG had the present intent to forward all funds received on the Project to Dayhill Group, LLC, as escrow agent.

43. The representations were material because if they had not been made, GMIC either (1) would not have issued the bonds, or (2) would have insisted on WBCG's participation in the SBA surety bond guarantee program as a condition of issuing the bonds, all of which was known to William Bigger and WBCG.

44. William Bigger and WBCG knew the representations were false when made

because they intended to appropriate all Project funds for their own interests rather than forward such funds to Dayhill Group, LLC.

45. The representations were intended to mislead GMIC into issuing the bonds without otherwise securing protection in the form of the SBA surety bond guarantee program that would have minimized its considerable loss.

46. GMIC reasonably relied on the representations when it issued the bonds on the Project at WBCG's request.

47. GMIC suffered damage as a result of issuing the bonds in the form of at least one payment bond claim that will be imminently paid as well as associated attorneys' and consultants' fees, costs and expenses.

48. In making the representations, receiving funds on the Project, and failing to remit any such funds to Dayhill Group, LLC, WBCG and William Bigger acted wantonly, oppressively, and with such a reckless and negligent character as to evince a conscious disregard of GMIC's rights.

WHEREFORE, GMIC seeks judgment against WBCG and William Bigger, jointly and severally, in the principal amount of $608,840.98, or those sums which the evidence may otherwise establish, plus all interest at the pre-judgment rate on each payment, and its consultants' and its attorneys' fees, costs and expenses, as well as post-judgment interest on the entire sum until paid, plus punitive damages in an amount not to exceed $350,000.

Respectfully submitted,

**GREAT MIDWEST INSURANCE COMPANY**

By Counsel

/s/ Thomas J. Moran
Richard T. Pledger (VSB No. 28192)
Thomas J. Moran (VSB No. 71296)
WRIGHT, CONSTABLE & SKEEN, LLP
301 Concourse Boulevard
Suite 120, West Shore III
Glen Allen, VA  23059
Telephone:	(804) 362-9434
Facsimile:	(804) 441-9250
email:	rpledger@wcslaw.com
	tmoran@wcslaw.com

14