IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GREAT MIDWEST INSURANCE COMPANY,**

        **Plaintiff,**

v.

**WB CONTRACTING GROUP, INC.,**

**WILLIAM BIGGER,**

        and

**ALISA BIGGER,**

        **Defendants.**

Civil Action No. 3:23cv680

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Great Midwest Insurance Company's ("GMIC") Motion for Judgment by Default (the "Motion") against Defendant Alisa Bigger. (ECF No. 19.) For the reasons that follow, the Court will grant the Motion.

### I. Factual and Procedural Background

**A.**    **Factual Background[1]**

Plaintiff GMIC, a Texas corporation with its principal place of business in Texas, engages in the surety business in the Commonwealth of Virginia. (ECF No. 1 ¶ 1.) Defendant WB Contracting Group, Inc. ("WBCG") is a Virginia corporation. (ECF No. 1 ¶ 2.) Defendant William Bigger is a Virginia resident and, "[a]t all times pertinent to this proceeding . . . served

---

[1] The Court draws all of the following facts from GMIC's Complaint, Motion, and all attached documents submitted with those filings, because Defendant Alisa Bigger has not responded to the Complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (requiring a court considering a default judgment motion to determine whether a plaintiff's well-pleaded allegations support the relief sought).

as the President of WBCG." (ECF No. 1 ¶ 3.) Defendant Alisa Bigger is a Virginia resident. (ECF No. 1 ¶ 4.)

### 1. WBCG's Subcontract for a Federal Construction Project

This case arises from WBCG's role as a subcontractor for a federal construction project in Fort Belvoir, Virginia (the "Project"). (ECF No. 1 ¶¶ 7, 11.) The general contractor on the Project was "American Water Enterprises, LLC, American Water Operations and Maintenance, LLC, and/or American Water Military Services, LLC" (collectively, "American Water"). (ECF No. 1 ¶ 11.) American Water awarded WBCG a subcontract for the Project. (ECF No. 1 ¶ 11.)

"In connection with the performance of its obligations to American Water under its subcontract, WBCG entered into various sub-subcontracts and/or purchase orders with subsubcontractors, materialmen, laborers, service providers and/or rental equipment providers." (ECF No. 1 ¶ 13.) Relevant here, R&S Services, LLC ("R&S") "entered into one or more subcontract(s), purchase order(s)[,] or other agreements for the furnishing of labor and/or material in the prosecution of the work performed by or for [WBCG] for [the Project]", with GMIC serving as surety. (ECF No. 1-5, at 1.)

### 2. The General Indemnity Agreement

In late January 2023, WBCG, William Bigger and Alisa Bigger (collectively, the "Defendants"), signed a General Indemnity Agreement ("GIA") that was "in favor of" GMIC. (ECF No. 1 ¶ 8; ECF No. 1-1, at 1, 9.) Pursuant to the GIA, Defendants agreed to exonerate and indemnify GMIC, acting as surety, for any and all losses incurred in connection with the (1) the performance and payment of bonds issued by GMIC on behalf of any Defendant; (2) the failure of any Defendant "to perform or comply with the covenants and conditions of the GIA"; or (3)

"the need to enforce any of the covenants and conditions of the GIA." (ECF No. 1 ¶¶ 7–9; *see generally* ECF No. 1-1.) Specifically, the GIA contains the following indemnification clause:

> INDEMNIFICATION. The Indemnitors [i.e., Defendants][2] hereby, jointly and severally, covenant, promise and agree to indemnify and hold harmless [GMIC] from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the rate set forth in Section 3.7 hereof, which Surety may sustain or incur or for which the Surety becomes liable or has reason to believe it may be, or may become liable by reason of or in consequence of the execution and/or delivery by [GMIC] of any Bond(s) on behalf of any Indemnitor.

(ECF No. 1-1, at 1.) The GIA further provides that GMIC's decision regarding the resolution of "any claims under a Bond . . . shall be final and binding upon the [Defendants.]" (ECF No. 1-1, at 2.) Lastly, according to the GIA, "[t]he rate of interest" for any liability that GMIC incurs on behalf of any Defendant "shall be the maximum rate permitted by law." (ECF No. 1-1, at 2.)

### 3. The American Water Bond

After the Parties executed the GIA, GMIC issued subcontract payment bonds for WBCG in connection with the Project. (ECF No. 1 ¶¶ 7, 11; ECF No. 1-4.) GMIC, as surety, issued a subcontract payment bond for WBCG listing WBCG as its principal, and American Water as its obligee (the "American Water Bond"). (ECF No. 1-4, at 1.) The American Water Bond provides that GMIC, as surety, and WBCG, as the principal, "jointly and severally, bind themselves . . . to [American Water] to pay for the labor, materials[,] and equipment furnished for use in the performance of the Subcontract", *i.e.*, the Project. (ECF No. 1-4, at 1–2.)

GMIC later received a claim under the American Water Bond from R&S for $623,820. (ECF No. 1 ¶ 14.) GMIC investigated this claim, determined that it was partially valid, and on

---

[2] The GIA lists WBCG as a "Business Entity Indemnitor[]" and Defendants William Bigger and Alisa Bigger as "Individual Indemnitors." (ECF No. 1-1, at 9.)

3

October 17, 2023 reached an agreement with R&S to resolve the claim for $608,840.98. (ECF No. 1 ¶ 14; ECF No. 1-5, at 1–2.)[3] On October 20, 2023, GMIC paid R&S $608,840.98. (ECF No. 19, at 3.) GMIC later received a payment from American Water for $8,677.88, reducing its loss for this payment to $600,163.10.[4] (ECF No. 20, at 3.)

Despite their obligations under the GIA to indemnify WBCG, no Defendant has reimbursed GMIC for this payment. (ECF No. 1 ¶¶ 16–21.) Relevant to this Motion, GMIC has specifically asked Ms. Bigger to indemnify it for its losses, and she has failed to comply. (ECF No. 1 ¶¶ 20–21.)

### B. **Procedural Background**

On October 19, 2023, GMIC filed a four-count Complaint against WBCG, William Bigger, and Alisa Bigger to recover for their failure to indemnify GMIC. (ECF No. 1.) On November 9, 2023, Ms. Bigger was served with a summons and copy of the Complaint by posted service at her residence in Chesterfield County, Virginia. (ECF No. 10, at 2–3.) On December 7, 2023, pursuant to Va. Code § 8.01–296,[5] GMIC mailed a copy of the Summons and

---

[3] In her Declaration, Ms. Janine Miller, a security claims adjuster, notes that "[a]s part of this investigation, GMIC sought WBCG's input on the validity of the claim." (ECF No. 19-1 ¶ 6.) Ms. Miller explains that "[w]hile WBCG argued that the claim was not valid, GMIC determined in good faith that WBCG's defenses were not meritorious under applicable law, and resolved R&S's claim in exchange for a payment of $608,840.98." (ECF No. 19-1 ¶ 6.)

[4] This reflects GMIC's initial payment of $608,840.98 minus its reimbursement via American Water of $8,677.88. (*See* ECF No. 19, at 3; ECF No. 20, at 3.) Adding this reduced loss amount of $600,163.10 to GMIC's legal fees and costs of $8,277.00 results in a "revised [total] net loss of $608,4401.10." (*See* ECF No. 19, at 3; ECF No. 20, at 3.)

[5] Va. Code § 8.01–296 provides, in relevant part, that process for a natural person may be served as follows:

1. By delivering a copy thereof in writing to the party in person; or

2. By substituted service in the following manner:

4

Complaint to her residence in Chesterfield County, Virginia, and filed a Certificate of Mailing with the Court that same day. (ECF No. 14, at 1.) Despite being properly served, Ms. Bigger failed to make an appearance or respond to the Complaint. On December 5, 2023, GMIC requested that the Clerk of Court enter default as to Ms. Bigger, (ECF No. 13), which the Clerk entered on December 22, 2023, (ECF No. 16). On February 1, 2024, GMIC filed its Motion for Default Judgment against Ms. Bigger. (ECF No. 19.) On May 7, 2024, GMIC filed a Supplemental Memorandum in Support of Motion for Judgment by Default (the "Supplemental Memorandum"). (ECF No. 20.)

In its Motion, GMIC requests that the Court enter Default Judgment against Ms. Bigger for: (1) $617,117.98 (reflecting $8,277.00 in legal fees and GMIC's $608,840.98 payment to R&S);[6] (2) prejudgment interest at 6 percent per year on $608,840.98, beginning on October 20, 2023; and, (3) "post-judgment interest at the legal rate." (ECF No. 19, at 3–4.) In its

---

> a. If the party to be served is not found at his [or her] usual place of abode, by delivering a copy of such process and giving information of its purport to any person found there, who is a member of his [or her] family, other than a temporary sojourner or guest, and who is of the age of 16 years or older; or
>
> b. If such service cannot be effected under subdivision 2 a, then by posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode, provided that not less than 10 days before judgment by default may be entered, the party causing service or his [or her] attorney or agent mails to the party served a copy of such process and thereafter files in the office of the clerk of the court a certificate of such mailing.

Va. Code § 8.01–296.

[6] Inconsistently, GMIC asserts in its Motion that through January 30, 2024, it has incurred a net loss of "$616,550.98", but then requests recovery "in the principal amount of $617,117.98." (ECF No. 19, at 3.) GMIC explains in its Supplemental Memorandum that the first amount was a scrivener's error. (ECF No. 20, at 1.) Relatedly, twice in the Motion GMIC inaccurately refers to itself as "Western Surety." (ECF No. 19, at 3.) GMIC clarifies in its Supplemental Memorandum that this was also a scrivener's error. (ECF No. 20, at 1.)

5

Supplemental Memorandum, GMIC explains that after receiving a third-party payment for $8,677.88, GMIC has a "revised net loss of $608,440.10" (which reflects $8,277.00 in legal fees and GMIC's net loss from its payment to R&S of $600,163.10, after accounting for receipt of $8,677.88 from American Water). (ECF No. 20, at 3.)

Considering the Motion and Supplemental Memorandum together, GMIC's third-party payment reduces GMIC's requested relief to (1) $608,440.10 in total damages; (2) prejudgment interest at 6 percent per year on $600,163.10; and (3) postjudgment interest at the legal rate.

## II. Standard of Review

Federal Rule of Civil Procedure 55 governs default judgment. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Unless the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, *see* Fed. R. Civ. P. 55(b)(1), the party seeking entry of default judgment must then "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

A defendant in default "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The clerk's entry of default does not itself warrant the Court's entry of default judgment. *See id.* But the "defendant is not held . . . to admit conclusions of law. In short, . . . a default is not treated as an absolute confession" of legal responsibility. *Id.* (quoting *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206). Normally, before entry of default judgment, the Court must determine whether the allegations of the complaint support the relief sought. *See id.* This is so because

"[d]efault is a harsh measure because it ignores the merits", *Bogopa Serv. Corp. v. Shulga*, No. 3:08cv365, 2009 WL 1628881, at *3 (W.D.N.C. June 10, 2009), and "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *State Employees' Credit Union v. Nat'l Auto Leasing, Inc.*, No. 2:06cv663 (JBF), 2007 WL 1459301, at *1 (E.D. Va. May 14, 2007) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

Prior to entering a default judgment, the Court must ensure that: (1) it possesses personal jurisdiction over the defaulting party; (2) it possesses subject-matter jurisdiction over each of the claims; (3) the action is in the proper venue; and, (4) the defaulting party received proper service of process. *See Am. Auto. Assoc. v. AAA Auto Glass, LLC*, No. 1:14cv1072 (CMH/TCB), 2015 WL 3545927, at *1–2 (E.D. Va. June 3, 2015).

A federal district court has subject-matter jurisdiction over claims that arise between citizens of different states where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).[7]

The Federal Rules of Civil Procedure provide that service of process on individuals can be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ.

---

[7] 28 U.S.C. § 1391 provides, in relevant part:

    (b) VENUE IN GENERAL.—A civil action may be brought in—

        (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]

28 U.S.C. §1391(b)(1).

7

P. 4(e).[8] For service on individuals, Va. Code § 8.01–296(2) provides that so-called "nail and mail" service can be used if no person qualified to receive service of process is present at the usual place of abode. In that case, substituted service may be effected "by posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode." Va. Code § 8.01–296(2)(b). This form of service is effective "provided that not less than 10 days before judgment by default may be entered, the party causing service or his [or her] attorney or agent mails to the party served a copy of such process and thereafter files in the office of the clerk of the court a certificate of such mailing." *Id.*

### III. Analysis

GMIC asserts that Ms. Alisa Bigger is liable for her failure to indemnify GMIC for its losses incurred in connection with GMIC's issuance of the American Water Bond on behalf of WBCG. The well-pleaded allegations in GMIC's Complaint, deemed admitted as a result of default by Ms. Bigger, establish that Ms. Bigger is liable to GMIC for these losses. Therefore, the Court will order default judgment against Ms. Bigger.

For the reasons articulated below below, the Court will order that Ms. Bigger pay to GMIC: (1) $600,163.10 (GMIC's October 20, 2023 payment to R&S of $608,840.98 minus

---

[8] Federal Rule of Civil Procedure 4 provides, in relevant part:

(e) SERVING AN INDIVIDUAL WITHIN A JUDICIAL DISTRICT OF THE UNITED STATES. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]

Fed. R. Civ. P. 4(e)(1).

GMIC's subsequent recovery of $8,677.88 from American Water); (2) $8,277.00 in legal fees; (3) prejudgment interest at an annual rate of six percent from October 20, 2023 until the date of this Memorandum Opinion on $600,163.10; and, (4) post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961 and accruing from the date of this Memorandum Opinion and related Order.

### A. The Court Has Jurisdictional and Statutory Authority to Render Default Judgment Against Ms. Bigger

The requirements for entering default judgment against Ms. Bigger have been satisfied. First, this Court has personal jurisdiction over Ms. Bigger because she is a Virginia resident. (ECF No. 1 ¶ 4.) Second, this Court has subject-matter jurisdiction over GMIC's claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states. (ECF No. 1 ¶¶ 1, 4; ECF No. 1, at 13.) Third, venue is proper in this District under 28 U.S.C. § 1391(b) because all defendants reside in this District. (ECF No. 1 ¶¶ 2–4, 6.) Fourth, Ms. Bigger received proper service of process by substituted service pursuant to Va. Code § 8.01–296(2). (ECF Nos. 10, 14.)

### B. GMIC's Allegations, Deemed Admitted, Establish that Ms. Bigger Is Liable Under the GIA for Failing to Indemnify GMIC

GMIC demonstrates entitlement to relief based on the well-pleaded facts in the Complaint and its exhibits. Pursuant to the GIA, Defendants—including Ms. Bigger—agreed to indemnify GMIC and are obligated to repay GMIC for all losses and expenses, including attorney's fees, incurred in connection with the performance and payment of bonds issued by GMIC on behalf of any Defendant. (ECF No. 1 ¶¶ 7–9; ECF No. 1-1.) GMIC paid R&S $608,840.98 to resolve a claim arising from the American Water Bond—a bond GMIC issued on WBCG's behalf. (ECF No. 1 ¶ 14.) GMIC later received a payment from American Water for

9

$8,677.88, reducing its loss for this payment to $600,163.10. (ECF No. 1 ¶ 14; ECF No. 20, at 3.) Through its efforts to receive reimbursement from Ms. Bigger, GMIC "has incurred attorneys' fees, costs and expenses through January 31, 2024, in the amount of $8,277.00." (ECF No. 19, at 3.) Under the GIA, which is governed by Texas law, Ms. Bigger is required to reimburse GMIC for (1) its payment to R&S, minus American Water's payment reducing this amount, and (2) its legal fees and costs incurred in connection with this suit.

### 1. Legal Standard: Choice-of-Law Provision

A federal court sitting in diversity must apply the forum state's choice-of-law rules. *Limbach Co. v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).

Under Virginia law, choice-of-law provisions are looked upon favorably and courts should give such provisions "full effect except in unusual circumstances." *Run Them Sweet, L.L.C. v. CPA Glob. Ltd.*, 224 F. Supp. 3d 462, 465 (E.D. Va. 2016) (internal quotation marks omitted) (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999)); *see also Zaklit v. Glob. Linguist Sols., L.L.C*, No. 1:14cv314 (JCC), 2014 WL 3109804, at *5 (E.D. Va. July 8, 2014) ("Virginia has long recognized that parties to a contract may agree in advance which jurisdiction's law will apply to their transaction."). Where "neither party challenges the fairness or reasonableness of the choice-of-law provision, or claims that the choice-of-law provision was affected by fraud or unequal bargaining power", the parties' choice-of-law clause is enforceable. *JAAAT Tech. Servs., LLC v. Tetra Tech Tesoro, Inc.*, No. 3:15cv235 (MHL), 2017 WL 4003026, at *8 (E.D. Va. Sept. 11, 2017)

### 2. Legal Standard: Enforcement of an Indemnity Agreement Under Texas Law

Under Texas law, a plaintiff "must establish five elements to enforce [an] Indemnity Agreement: (1) 'a contractual indemnity agreement existed,' (2) 'the agreement obligated [the defendant] to indemnify [the plaintiff] in the event claims were made on the bonds issued,' (3) 'claims were made on the bonds issued,' (4) 'all conditions precedent for recovery had occurred, been performed, waived, or excused,' and (5) [the plaintiff] 'has been damaged.'" *Liberty Mut. Ins. Co. v. Ricehouse ("Liberty")*, No. 4:21cv689, 2023 WL 1481341, at *2 (E.D. Tex. Feb. 1, 2023) (quoting *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995)).

### 3. GMIC Has Established Ms. Bigger's Liability Under the Indemnity Agreement

As a threshold matter, the GIA contains a choice-of-law provision mandating that it "shall be governed by and construed in accordance with the laws of the State of Texas." (ECF No. 1-1, at 8.) Because no party challenges the fairness or reasonableness of the choice-of-law provision, or claims that the choice-of-law provision was affected by fraud or unequal bargaining power, the Court will interpret the GIA according to Texas law.[9] *JAAAT Tech. Servs., LLC*, 2017 WL 4003026, at *8. Under Texas law, GMIC's well-pleaded allegations establish Ms.

---

[9] In its Motion, GMIC contends that Virginia law applies to the enforcement of the GIA, stating that "'Virginia adheres to the principle that the law of the place of performance governs questions arising in connection with the performance of a contract.'" (ECF No. 19, at 2 (quoting *Equitable Trust Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565, 567 (4th Cir. 1975).) Then, without *any* supporting legal authority, GMIC contends that "[t]he damages claimed by GMIC in this action pertain to a construction project in Fort Belvoir, Virginia. Accordingly, Virginia law applies." (ECF No. 19, at 2.) GMIC does not address the fact that the GIA has a Texas choice-of-law provision, nor does it even attempt to provide any grounds for why the Court should decline to enforce this provision. As a result, the Court is not swayed by GMIC's threadbare contention that Virginia law applies.

11

Bigger's Liability under the GIA because GMIC pleads all five elements necessary to enforce an indemnity agreement.

### a. A Valid Indemnity Agreement Exists

In late January 2023, Defendants executed the GIA in favor of GMIC. (ECF No. 1 ¶ 8; ECF No. 1-1, at 9.) The GIA lists WBCG as a "Business Entity Indemnitor[]" and Defendants William Bigger and Alisa Bigger as "Individual Indemnitors." (ECF No. 1-1, at 9.)

"To be enforceable, the agreement's express language must hold the indemnitors liable to the surety." *Liberty*, 2023 WL 1481341, at *2 (citing *English v. Century Indem. Co.*, 342 S.W.2d 366, 369 (Tex. Civ. App.—San Antonio 1961, no writ) and *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693, 698 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.). The GIA satisfies this requirement because the indemnity language clearly obligates Defendants to GMIC for losses incurred as a result of executing bonds on behalf of any Defendant:

> INDEMNIFICATION. The Indemnitors [i.e., Defendants] hereby, jointly and severally, covenant, promise and agree to indemnify and hold harmless [GMIC] from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the rate set forth in Section 3.7 hereof, which Surety may sustain or incur or for which the Surety becomes liable or has reason to believe it may be, or may become liable by reason of or in consequence of the execution and/or delivery by Surety of any Bond(s) on behalf of any Indemnitor.

(ECF No. 1-1, at 1.) Thus, the GIA constitutes a valid and enforceable indemnity agreement.

### b. The Indemnity Agreement Requires Ms. Bigger to Indemnify GMIC for Claims Made on the Bonds

Turning to the second requirement, the GIA obligates Ms. Bigger to indemnify GMIC for R&S's claim made on the bond issued on behalf of WBCG. "Under Texas law, courts look to the plain language of a contract to construe the parties' intent." *Liberty*, 2023 WL 1481341, at

12

*3 (E.D. Tex. Feb. 1, 2023) (citing *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016)). "If that language has a 'certain or definite meaning' no further inquiry is necessary." *Id.* (quoting *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015)).

The language of the GIA, cited in the section directly above, is clear. Defendants, including Ms. Bigger, must indemnify GMIC for claims made on bonds issued by GMIC on behalf of any Defendant. Here, GMIC issued a subcontract payment bond on behalf of Defendant WBCG in connection with a federal construction project in Fort Belvoir, Virginia. (ECF No. 1 ¶¶ 7, 11; ECF No. 1-4.) GMIC later received a claim under this subcontract payment bond from R&S, determined that it was partially valid, and paid R&S to resolve this claim. (ECF No. 1 ¶ 14; ECF No. 19, at 3; ECF No. 20, at 3.) As described above, the GIA requires Defendants, including Ms. Bigger, to indemnify GMIC for "any and all liability . . . for which [GMIC] becomes liable . . . in consequence of the execution and/or delivery by [GMIC] of any Bond(s) on behalf of any [Defendant]." (ECF No. 1-1, at 1.) The GIA further provides that GMIC's decision regarding the resolution of "any claims under a Bond . . . shall be final and binding upon the [Defendants]". (ECF No. 1-1, at 2.) As a result, the GIA requires Ms. Bigger to indemnify GMIC for its settlement of R&S's claim covered by GMIC's bond. *See Liberty*, 2023 WL 1481341, at *3.

        c.     <u>**A Claim Was Made Against GMIC's Bond**</u>

GMIC's well-pleaded allegations also satisfy the third element that a claim was made against GMIC's bond. As discussed, GMIC issued a subcontract payment bond on behalf WBCG, later received a claim under this bond from R&S, determined its partial legitimacy, and

13

GMIC ultimately reached a monetary agreement with R&S to resolve this claim. (ECF No. 1 ¶ 14; ECF No. 1-5, at 1–2; ECF No. 19-1, at 2; ECF No. 19-6, at 1.)

### d.     All Conditions Precedent Have Occurred

Turning to the fourth element, the well-pleaded allegations establish that all conditions which precede the requirement of payment by Ms. Bigger to GMIC have occurred. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998) ("A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied."); *see also Liberty*, 2023 WL 1481341, at *3 (determining that this fourth element was satisfied where all conditions "which precede the requirement of payment by the indemnitor to the surety" had been satisfied).

The GIA provides that all Defendants, including Ms. Bigger, "*shall*, upon request of [GMIC], procure the discharge of [GMIC] under any Bond and from and against any and all lability by reason thereof." (ECF No. 1-1, at 7 (emphasis added).) On September 5, 2023, GMIC sent a letter to all Defendants (the "September 5 Letter"), including Ms. Bigger, via certified mail, informing them that GMIC had "recently received a payment bond claim arising out of" the American Water Bond for $623,820 from R&S. (ECF No. 1-6, at 1.) The September 5 Letter reminds Defendants, including Ms. Bigger, that they executed the GIA, and that, pursuant to that agreement, GMIC "demands . . . on or before September 8, 2023", $623,820.00. (ECF No. 1-6, at 2.)[10]  Ms. Bigger did not provide the requested payment, and GMIC ultimately paid R&S itself to solve the claim. (ECF No. 1 ¶ 14; ECF No. 1-5, at 1–2.) Thus, all conditions

---

[10] GMIC notes in its Complaint that on October 12, 2023, it "reiterated its collateral demand in a [second] letter." (ECF No. 1 ¶ 17 (citing ECF No. 1-7).) This letter is not addressed to Ms. Bigger, nor does it copy (*i.e.*, "cc") Ms. Bigger, and thus the Court will not treat it as an additional example of GMIC demanding any payment from her. (ECF No. 1-7, at 6.)

14

preceding Ms. Bigger's requirement of payment to GMIC have been satisfied where GMIC (1) incurred liability as a result of the GIA, and (2) requested that Ms. Bigger discharge it of this liability.

### e. GMIC Suffered Damages

Finally, GMIC has suffered damages based on its issuance of the American Water Bond. As described in the Complaint and its exhibits, GMIC paid R&S $608,840.98 to resolve a claim arising from the American Water Bond—a bond GMIC issued on WBCG's behalf. (ECF No. 1 ¶ 14; ECF No. 19-1 ¶ 6; ECF No. 19-5, at 1; ECF No. 19-6, at 1.) GMIC later received a third-party payment for $8,677.88, reducing its loss for this payment to $600,163.10. (ECF No. 1 ¶ 14; ECF No. 20, at 3.) Through its efforts to receive reimbursement from Ms. Bigger, GMIC "has incurred attorneys' fees, costs[,] and expenses through January 31, 2024, in the amount of $8,277.00." (ECF No. 19, at 3.) Accordingly, GMIC has established that it incurred liability under the GIA.

### C. Damages and Interest Owed

Having determined that Ms. Bigger is liable under the GIA, the Court now turns to the appropriate amount of damages and interest owed. As to damages, the Court will award damages based on GMIC's $600,163.10 loss incurred as a result of its payment to R&S pursuant to the GIA.[11] For the reasons outlined below, the Court will also award reasonable attorney's fees and costs amounting to $8,277.00. (ECF No. 19, at 3.) Pursuant to the GIA and relevant Texas law, the Court will award prejudgment interest at a rate of 6 percent. Lastly, the Court

---

[11] This reflects GMIC's initial payment of $608,840.98 minus its reimbursement via American Water of $8,677.88. (*See* ECF No. 19, at 3; ECF No. 20, at 3.)

15

will award post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961 and accruing from the date of this Memorandum Opinion and related Order.

1. **Attorney's Fees and Costs**

"[U]nder Texas law,[12] attorney's fees and litigation expenses [are recoverable if] provided for by statute or by contract between the parties." *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 807 (5th Cir. 2010) (citing *Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006)); *see also Liberty*, 2023 WL 1481341, at *6 n.4. Where Texas law supplies the rule of decision, Texas law "controls both the award of and the reasonableness of fees awarded." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, courts have discretion to determine the amount of the attorneys' fee award, but an award of reasonable fees is mandatory if a party prevails in a breach of contract case and there is proof of reasonable fees. *Id.* at 462. A court's discretion in awarded fees "is guided by two presumptions": (1) "there is a rebuttable presumption of reasonableness for fees that are 'usual' or 'customary'"; and (2) "where the fees are tried to the court . . . judges may take judicial notice of the 'usual and customary fees' and the contents of the case file." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 38.003 (Vernon 2002)).

Here, the GIA includes explicit language relating to attorney's fees and costs. (ECF No. 1-1, at 1 ("The [Defendants] . . . agree to indemnify and hold harmless [GMIC] from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature" incurred "in consequence of the execution and/or delivery by [GMIC] of any Bond(s) on behalf

---

[12] As discussed in more detail above, the Court applies Virginia's choice-of-law rules, which direct the Court to apply Texas law to the interpretation of the GIA.

16

of any [Defendant].") (emphasis in original).) Furthermore, "'motions for attorney's fees provided by contract are permissible under [Federal Rule of Civil Procedure] 54(d)(2)'".[13] *Liberty*, 2023 WL 1481341, at *6 n.4 (quoting *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1039–40 (5th Cir. 2014).) Therefore, the Court finds it appropriate to award reasonable attorney's fees and costs.

GMIC requests $8,277.00 in attorney's fees and costs. (ECF No. 19, at 3.) To establish the amount and reasonableness of this request, GMIC submits the Declaration of Thomas J. Moran (the "Moran Declaration"). (ECF No. 19-7.) Exhibit A to the Moran Declaration provides an hourly and itemized breakdown of the attorney's fees and costs requested. (ECF No. 19-8, at 1–10.)

Upon review, the Court finds that the itemized request for attorney's fees and costs is customary and reasonable. The Court will award the requested $8,277.00 in attorney's fees and costs.

    2. **Prejudgment Interest**

The Court now turns to its calculation of prejudgment interest. In a diversity case involving a breach of contract, the award of prejudgment interest is governed by the state law applicable to the contract. *FDI Cap., LLC v. Petrogas Field Servs.*, No. 1:22cv1012 (LMB/JFA), 2023 WL 6192770, at *7 (E.D. Va. Feb. 17, 2023), *report and recommendation adopted sub nom. FDI Cap., LLC v. Petrogas Field Servs., Inc.*, No. 122cv1012 (LMB/JFA), 2023 WL

---

[13] Federal Rule of Civil Procedure 54(d)(2) provides, in relevant part:

> (A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

Fed. R. Civ. P. 54(d)(2)(A).

17

3069391 (E.D. Va. Mar. 15, 2023) (citing *Hitachi Credit Am. Corp.*, 166 F.3d at 633); *see, e.g.*, *SunTrust Bank v. Rogovin*, No. CV 12-07151, 2013 WL 12203865, at *2 (C.D. Cal. June 19, 2013) (in diversity case where parties chose Virginia law by the terms of the note at issue, Virginia law governed the award of prejudgment interest).

"[U]nder Texas law[,] prejudgment interest is available in breach of contract cases, such as this one."[14] *Liberty*, 2023 WL 1481341, at *6 (citing *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002)). The GIA states that the relevant interest rate "shall be the maximum rate permitted by law." (ECF No. 1-1, at 2.) Under Texas law, in no circumstances shall a contractual interest rate exceed 10 percent and, "in contracts where no rate of interest is agreed upon, the rate shall not exceed six per centum (6%) per annum." Tex. Const. art. XVI, § 11. Here, the GIA provides no specific interest rate. Therefore, the prejudgment interest shall not exceed 6 percent per annum. *Id.* The Court will award a prejudgment interest rate at 6 percent per annum on the amount of $600,163.10 beginning on October 20, 2023 (the date GMIC paid R&S to resolve its claim under the American Water Bond). (ECF No. 19, at 3.)[15]

---

[14] As discussed in more detail above, the Court applies Virginia's choice-of-law rules, which direct the Court to apply Texas law to the interpretation of the GIA.

[15] This award is consistent with GMIC's requested prejudgment interest rate of "six percent per annum" on the amount it paid to R&S. (ECF No. 19, at 3–4.) Although GMIC initially requested that the Court award a six percent interest rate per annum "on the amount of $608,840.98, beginning on October 20, 2023", (ECF No. 19, at 3–4), GMIC later reduced this requested amount by $8,677.88, to $600,163.10, to reflect a payment from American Water that partially covered GMIC's October 20, 2023 payment to R&S. (*See* ECF No. 20, at 3.) Adding this reduced loss amount of $600,163.10 to GMIC's legal fees and costs of $8,277.00 results in a "revised [total] net loss of $608,4401.10." (*See* ECF No. 19, at 3; ECF No. 20, at 3.) In its Motion, GMIC only asked that prejudgment interest apply to the amount it paid to R&S. (ECF No. 19, at 3–4.)

18

### 3. **Post-Judgment Interest**

Even in diversity cases, "[f]ederal law, rather than state law, governs the calculation of post-judgment interest." *Hitachi Credit Am. Corp.*, 166 F.3d at 633 (citing *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989)).

Under 28 U.S.C. § 1961(a), the uniform federal rate for post-judgment interest is "calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). No clear language in the GIA indicates that any other rate should apply. *See Haas v. Falmouth Financial, LLC*, No. 1:10cv565 (TSE), 2011 WL 13238417, at *4 (E.D. Va. June 13, 2011) ("Although parties may contractually agree to a different post-judgment rate, it is well settled that any agreement as to post-judgment interest must be expressed in clear, unambiguous and unequivocal language." (internal quotation marks and citation omitted)). Therefore, GMIC is entitled to the statutory post-judgment interest rate set in 28 U.S.C. § 1961. *See FDI Cap., LLC*, 2023 WL 6192770, at *7 (reaching same conclusion where relevant contract did not contain "clear language" indicating that any other rate should apply).

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion. (ECF No. 19.) First, the Court will order that default judgment be entered against Ms. Alisa Bigger. Ms. Bigger will be ordered to pay $600,163.10 in damages and $8,277.00 in legal fees and costs. Ms. Bigger will be ordered to pay prejudgment interest at an annual rate of six percent on $600,163.10 from October 20, 2023 until the date of this Memorandum Opinion and related Order, as well as post-

judgment interest to be calculated in accordance with 28 U.S.C. § 1961, accruing from the date of this Memorandum Opinion and related Order.

An appropriate Order shall issue.

Date: 8/14/24
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge